## Young Estate.

Argued April 21, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PARKER and STEARNE, JJ.

*Samuel H. Jubelirer*, of *Jubelirer, Jubelirer & Smith*, for appellant.

*Robert C. Haberstroh*, with him *Frank B. Warfel*, *John M. Klepser* and *Harrison C. Snyder*, for appellees.

OPINION BY MR. CHIEF JUSTICE MAXEY, June 30, 1943:

This appeal arises out of an issue d. v. n. in which it was charged that the signature to a certain paper purporting to be a will was forged. Mrs. Maud Young, aged 79 years, died in Hollidaysburg on January 26, 1941, leaving real and personal property of the value of $40,000. Her next of kin were nieces and nephews. From 1928 until she died she frequently consulted on her busi-

ness affairs, George G. Patterson, Esq. At Mrs. Young's direction Judge Patterson (then an attorney*) prepared a will for her on February 2, 1938, and a codicil thereto on February 8, 1939. They were duly executed.

After Mrs. Young's death a paper purporting to be her will and dated November 29, 1940, was admitted to probate. Mrs. Bice, one of the four chief beneficiaries under this will, and a niece by marriage of Mrs. Young, claims that the latter brought this will to the Bice home and there signed it in the presence of Willard Campbell and Marion Wertz, son and employee, respectively, of Mrs. Edith Bice, and then left the will with her. Four days after Mrs. Young's death the paper was exhibited to Judge Patterson, one of the persons named in this will as executor of the estate, the others being Mrs. Edith Bice and Mrs. Anna Gallagher.

From the probate of this paper Mary Catherine Amick, niece of the decedent, appealed and a citation was then issued, directed against the parties in interest to show cause why an issue devisavit vel non should not be granted, the allegation being that the signature: Mrs. Maud Young, on this paper, was a forgery. An answer was filed and after testimony was taken, an issue was directed to a jury for an answer to these questions: (1) "Whether the signature to the said writing dated November 29, 1940, is the true and genuine signature of Maud Young, deceased," and (2) "Whether or not the said writing is the will of the said decedent." After trial the jury on May 14, 1942, answered both questions: "No". Counsel for the proponents filed reasons for a new trial and also asked for judgment n. o v. The court dismissed the plaintiffs' motions. This appeal followed.

The basic question in this case is whether or not the evidence in support of the charge of forgery is in law sufficient to overcome the testimony of those who claim to

---

* He became President Judge of the several courts of Blair County on February 5, 1940.

be subscribing witnesses to the execution of this challenged paper. Appellants contend that the testimony of expert witnesses in a case of this character can only be "corroborative", and that there was no "direct and positive" evidence of the forgery charged, and that therefore there was nothing to corroborate.

The law governing cases of this character is settled. By the Act of June 6, 1913, P. L. 451, Sec. 1, 28 PS 161, it is provided that "where there is a question as to any writing, the opinions of the following persons shall be deemed to be relevant: (a) The opinion of any person acquainted with the handwriting of the supposed writer. (b) The opinion of those who have had special experience with, or who have pursued special studies relating to, documents, handwriting, and alterations thereof, who are herein called experts. Section 2 of the same Act provides: "It shall be competent for experts in giving their testimony, under the provisions of this act, to make comparison of documents and comparison of disputed handwriting with any documents or writing admitted to be genuine, or proven to the satisfaction of the judge to be genuine, and the evidence of such experts respecting the same shall be submitted to the jury as evidence of the genuineness or otherwise of the writing in dispute."

In *De Laurentiis's Estate*, 323 Pa. 70, 76, 186 A. 359, this court quoted with approval what was said in *Henry's Estate*, 276 Pa. 511, that "opinion evidence, *standing alone*, as it did, would not sustain a finding of forgery, in the face of the direct and credible evidence . . . Were the direct evidence discredited, or the opinion evidence strengthened by facts and circumstances, the case might be different."

In *Porter's Estate*, 341 Pa. 476, 19 A. 2d 731, we held that the testimony of the handwriting experts would not be sufficient to sustain a verdict against the will in the light of the uncontradicted and unimpeached testimony of the subscribing witnesses to the will.

Other jurisdictions are in accord with the Pennsylvania rule as to the testimony of handwriting experts

plus circumstances of probative value being sufficient to overcome the testimony of those claiming to be subscribing witnesses to a questioned document. In *O'Connor v. Slaker*, 179 N. W. 401, the Supreme Court of Nebraska held as follows: Testimony of handwriting experts that a will offered for probate is a forgery, if based on sound reasons and circumstances supporting that theory, may be sufficient to overturn the testimony of subscribing witnesses that they saw the will executed. On the issue that a will offered for probate is a forgery, the testimony of subscribing witnesses that it was duly executed may be overthrown by any probative proof, either direct or circumstantial, if admissible under the ordinary rules of evidence. After substantial evidence has been adduced in support of the plea that a will offered for probate is a forgery, there is no presumption that the persons purporting to be subscribing witnesses told the truth in testifying that they saw the will executed, though not directly impeached or directly contradicted. In *Baird et al. v. Shaffer*, 168 Pac. 836, the Supreme Court of Kansas held that the testimony of subscribing witnesses to a will may be overcome by any probative facts and circumstances admissible under the ordinary rules of evidence. In *Oliver v. Oliver*, 340 Ill. 445, 172 N. E. 917, the Supreme Court of Illinois held that testimony of subscribing witnesses to a will may be overcome by any competent evidence circumstantial as well as direct.

Wigmore on Evidence, 3d ed. Vol. IV, sec. 1302 (clause 3), says: "The testimony of the attesting witnesses is of course *not conclusive in favor of* execution even when all agree and when no personal impeachment is attempted . . . The unanimous testimony of the attesters may fail of credit even though the only opposing evidence is that of the alleged *maker's handwriting* as analyzed by *expert witnesses*. The circumstantial evidence afforded by the handwriting may in a given case be more convincing than the testimony of the attesters.

This possibility is one of the results of the modern scientific study of handwriting."

Applying to this case the Pennsylvania rule first above cited, the opinion evidence does *not* "stand alone", and the evidence of the subscribing witnesses falls far short of being "credible" and "unimpeached". The opinion evidence adverse to this 1940 paper is immeasurably "strengthened by these facts and circumstances":

(1) The scrivener of this will has at no time been produced. The draftsman of an important paper whose genuineness is challenged does not, if alive, usually remain in hiding. If he has recently died some one usually comes forward to testify to his identity with the paper. Mrs. Young died only fifty-eight days after the date of this alleged will. It is *not* probable that she typed it and it *is* probable that the draftsman or draftswomen of this document was alive at the time this case was tried. If there is such a thing as "mute testimony" this anonymous scrivener's silence may be so characterized.

(2) The "will" was signed "Maud Young". In all of the forty exhibits offered in this case bearing the admittedly genuine signature of this woman, she signed her name, "Mrs. Maud Young". It is unusual for a person to attach to such an important document as a will any other than that person's accustomed signature. Both the will of 1938 and the codicil of 1939 were signed "Mrs. Maud Young". A forger would rather forge nine letters of a name than twelve letters.

(3) The will and codicil were left in Judge Patterson's possession and Mrs. Young did not at any time ask him for their return, as she naturally would have done had she executed a later will. When she executed the 1938 will she had directed her attorney to destroy an earlier will. After making the 1938 will and 1939 codicil Mrs. Young frequently gave Judge Patterson personal instructions concerning her property, the conduct of her funeral and her burial. She was in his office in January 1941 and brought a list of her mortgages with her and

requested the assistance of Judge Patterson and his secretary in making her Personal Property Tax Return for that year and she gave the secretary the money with which to pay this tax. She said nothing to Judge Patterson or his secretary about the 1940 will at that time. She died during that same month. The silence of this woman in the presence of the man whom she had consulted professionally during a dozen years, about a will these proponents declare she had executed six weeks previously and in which this man was named one of the executors, would generate even in the mind of the gullible a formidable doubt as to this declaration's veraciousness.

(4) On the same day that Mrs. Young died Mrs. Bice, who is one of the chief beneficiaries of this 1940 will, called Judge Patterson and told him that she had Mrs. Young's will [the 1940 paper], and Judge Patterson requested her to bring this to his residence, as he wished to see it. Up to that moment he had heard nothing of any will of Mrs. Young later in date to the will she had entrusted to his possession after executing it in his office two or three years before. Mrs. Bice did not comply with Judge Patterson's request *until four days later*. She assigned no reason for this unusual and suspicious delay.

(5) The "subscribing witnesses" to the alleged "1940 will" can *not* be characterized as wholly disinterested. Witness Willard Campbell is a son of Mrs. Bice, and Marion Wertz is employed by her at her home, and as the court below stated, is considered and treated practically as one of her family. As to the credibility given these "subscribing witnesses", the court below said: "Their memory was quite confused on many details, and in certain instances their testimony discredited." The record supports this judicial imputation.

Appellant complains of the refusal of the court to charge, as requested, that proof of declarations of deceased, either prior or after the execution of the disputed will, was not in itself [sufficient] either to establish ex-

ecution of this will or to overcome the testimony of the subscribing witnesses, and is admissible only for the purpose of corroboration. These declarations were those made by Mrs. Young to certain persons who testified at the trial and were to the effect that her will was in the possession of Judge Patterson, thus negativing the idea that she had any *later* will. Appellant quotes the following from *Swope v. Donnelly,* 190 Pa. 417: ". . . The proof of declarations was *not in itself* sufficient either to establish the execution of the will or to overcome the testimony of the subscribing witnesses, and that it was admissible only *for the purpose of corroboration."*

This is, of course, the law, but it is of no avail to these appellants because, as we have pointed out, there was in this case irrespective of all this corroborative evidence, an array of facts and circumstances which had a devastating effect on the claim of integrity made for this 1940 document. As the trial judge declared, the testimony of those who made this claim was confused and discredited.

There is no law requiring that in cases such as this the evidence to be "corroborated" must be of such a "direct and positive" character as to consist of the testimony of some one who was with the decedent at all times when the questioned document *could* have been executed by her and who positively swears that the decedent did not execute the document. In such cases positive and direct evidence is the most nearly positive and direct evidence which the nature of the case will admit. Blackstone in his Commentaries, Vol. 3, p. 368, says: "The one general rule that runs through all the doctrine of trials is this,—that the best evidence the nature of the case will admit of shall always be required, if possible to be had; but, if not possible, then the best evidence that can be had shall be allowed". Thayer in his Preliminary Treatise on Evidence at the Common Law says, (p. 507) : "The fact that any given way of proof is all that a man has must be a strong argument for receiving it, if it be in a fair degree probative." Wigmore on Evidence, 3d ed.

Vol. I, Sec. 26, says: "There are no rules in our system of evidence prescribing for the jury the precise effect of any general or special class of evidence. So far as logic and psychology assist us, their conclusions show that it is out of the question to make a general assertion ascribing greater weight to one class or to the other. The probative effect of one or more pieces of either sort of evidence depends upon considerations too complex." Chief Justice GIBSON in *Com. v. Harman,* 4 Pa. 269, 271, said: "Circumstantial evidence is, in the *abstract,* nearly, though perhaps not altogether, as strong as positive evidence; in the *concrete,* it may be infinitely stronger. A fact positively sworn to by a single eye witness of blemished character, is not so satisfactorily proved, as is a fact which is the necessary consequence of a chain of other facts sworn to by many witnesses of undoubted credibility." Chief Justice SHAW in *Com. v. Webster,* 5 Cush. 295, 312, said: "Circumstantial evidence, therefore, is founded on experience and observed facts and coincidences, establishing a connection between the known and proved facts and the fact sought to be proved. The advantages are, that, as the evidence commonly comes from several witnesses and different sources, a chain of circumstances is less likely to be falsely prepared and arranged, and falsehood and perjury are more likely to be detected and fail of their purpose."

The testimony of the handwriting expert, M. A. Nernberg, was most convincing that the signature on the "1940 will" was a forgery. Judge Patterson, who was familiar with Mrs. Young's signature, was "positive" that this signature was a forgery. Miss Reffner, secretary to Judge Patterson, and Donald Pheasant, who did certain clerical work for Mrs. Young during a period of eleven years and both of whom were familiar with Mrs. Young's signature, expressed the opinion that the "1940 will" did not bear that signature.

The evidence in this case proves conclusively that the document challenged was a fraud. This case was sub-

mitted to the jury by the learned trial judge in a charge which gave no just cause for complaint. There were no errors in the admission or rejection of testimony. Any other verdict than the one rendered by the jury would generate a substantial suspicion of its perversity.

The decree is affirmed. Costs to be paid by the appellant.