## Pochron Will.

Argued March 21, 1951. Before DREW, C. J., STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*W. Robert Thompson,* with him *Waychoff, Maxwell & Waychoff, Smith, Marion & Balaban, Montgomery, Thompson & Baily* and *Ray, Coldren & Buck,* for appellants.

*Chad L. John,* with him *J. R. Scott,* for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, May 21, 1951:

In a will contest a college and an engineers' society, beneficiaries in a will of decedent, charge that decedent's name was forged to a writing which is a republication of decedent's earlier will, devising and bequeathing the entire estate to her surviving husband. All three writings were presented to the Register of Wills for probate and were certified to the Orphans' Court of Greene County under sec. 18 of the Register of Wills Act of June 7, 1917 P. L. 415, 20 PS 1981. The case was heard by President Judge MATTHEWS of the Orphans' Court of Fayette County, specially presiding. The hearings consumed over seven days. The printed record consists of 744 pages. The learned hearing judge made an exhaustive analysis of the evidence, which relieves us from a detailed recital of the circumstances leading up to and bearing upon the present litigation. The issue resolves itself to the single question whether decedent's signature to the paper of November 19, 1949 (republishing the earlier will of July 2, 1947) was forged, Judge MATTHEWS decreed that no substantial dispute upon a material matter of fact was shown to exist, and directed the probate of both papers as the last will and testament of decedent. These appeals followed.

Gertrude Southard Pochron, the testatrix, died November 21, 1949, survived by a husband, John W. Pochron, but no issue. Her estate, consisting of real and personal property said to be valued at about $80,000, had been inherited from her former husband, Claude F.

Southard, who died in 1936. On August 3, 1946, testatrix married proponent. The record does not disclose her precise age but it was then estimated by her physician to be at least seventy at the date of remarriage. Proponent, then a lieutenant (junior grade) in the United States Navy, was twenty-three. They gave their ages at the Maryland Marriage License Bureau as twenty-three and forty-five.

We are in entire accord with the hearing judge that it would serve no useful purpose to narrate in detail the various wills and codicil executed by decedent and the varying reasons for changing them, up to and including the date of her second marriage in August 1946. On July 2, 1947 decedent executed a professionally drawn witnessed will under which she directed the erection of a monument, devised and bequeathed the residue of the estate to proponent absolutely, and named him sole executor. No question is raised regarding this document.

On October 26, 1948 decedent executed another will in which she provided for her burial and a monument; gave a diamond ring to a named stenographer in the office of her former attorney; divided the residue of her estate between the Waynesburg College and Engineers' Society of Western Pennsylvania and named her former attorney executor. It is this document which the surviving husband charged was obtained through undue influence. We agree with the hearing judge that the record is wholly devoid of evidence, sufficient in quality, to support the grant of an issue *devisavit vel non,* because of alleged undue influence, in connection *with the will of* October 26, 1948. Such petition was properly denied.

The third writing offered for probate, alleged to be signed by decedent, reads as follows:

"I have made several wills during my lifetime and I do not know whether any of them have been destroyed.

"I want them all cancelled and destroyed except the one written by Chad L. John and witnessed by Earl S.

Areford and Earl W. Fuller in which I gave all my property to my husband John W. Pochron to do with as he sees fit.

"I want all other wills written either before or after that will cancelled for I give to my husband John W. Pochron everything I own.

"Signed this November 19, 1949.

Gertrude W. Southard"

The signature of decedent to this document is alleged not to be genuine but forged. This is the crux of this case. All other considerations are but auxiliary and collateral.

The paper has no *subscribing* witnesses. But three witnesses *testified* that on that date they saw decedent affix her signature to the document. The witnesses are Mary Pochron, mother of proponent; Robert Pochron, brother of proponent and John W. Pochron, the proponent.

The mother testified that on November 19, 1949 (three days prior to the death on November 21, 1949), decedent was ill and bedfast; decedent requested the witness to tell decedent's husband that she wanted him to write something for her, which message she delivered; that proponent went into another room and secured pen and paper, whereupon decedent dictated words to him, and proponent wrote the words herein quoted on the paper and read them to decedent and asked her if that was what she wanted. Decedent answered that it was. The proponent's brother Robert was in the room. All three attesting witnesses testified that decedent then signed the paper in their presence and in the presence of each other. No question is raised concerning the testamentary capacity of decedent. This is conceded.

We are not concerned with the wisdom or folly of the marriage of individuals of such wide disparity in age. There is testimony by contestants that the husband at times was discourteous, cruel and abusive (all of

which proponent denied). But there is also testimony on behalf of proponent (undenied) of many evidences of affection and regard by decedent for her husband. They held safe deposit boxes jointly; she executed a letter of attorney giving him dominion over her securities; she executed to him a bill of sale of personal property. She also deeded real estate to proponent and presented him with a new. automobile. It is undenied that except for some periods when the husband attended college in another state he and she lived together as husband and wife from the time of their marriage until her death, over three years later.

We come then to the execution of the questioned document: Three attesting witnesses testified that they saw testatrix sign her name to it, in their presence and in the presence of each other. We agree with the hearing judge that these witnesses, while *interested,* were neither discredited nor impeached. *Interest* alone will not discredit the testimony of an attesting witness. We agree that their testimony was not impeached in the slightest degree by the searching and rigorous cross-examination. A handwriting expert and five lay witnesses expressed their *opinion* that the signature was genuine. On the side of contestants an eminent handwriting expert and three lay witnesses testified that in their *opinions* the signature was forged.

It is urged that the belated disclosure of the questioned document by proponent and by his counsel creates suspicion upon its genuineness. This criticism is answered by Judge MATTHEWS:

"If the signature to the writing was genuine at the time it was made, of course it remains so, and the fact that it was not produced within any given time could not change it. Counsel asserted the right to control the manner in which his client's cause should be presented, but we cannot help reflecting upon the great amount of

time and labor which might have been unnecessary had this writing been produced at the outset." ··

Suspicion and conjecture do not take the place of evidence: *Rosenthal's Estate,* 339 Pa. 488, 15 A. 2d 370; *Sellers & Co. v. Clarke-Harrison, Inc.,* 354 Pa. 109, 46 A. 2d 497; *Lasky v. Paprocki et ux.,* 363 Pa. 50, 68 A. 2d 593.

We have present, therefore, three attesting witnesses testifying to the *fact* that they saw decedent sign the questioned paper, buttressed by the *opinion* testimony of an expert and five lay witnesses as to the genuineness of the signature. Against this is the *opinion* testimony of an expert and three lay witnesses. We have recently reviewed the weight to be given *opinion* testimony against *factual* testimony in cases of forgery: see *Peterman Will,* 367 Pa. 302, 80 A. 2d 792. We said: "We agree that the *opinion* testimony of a handwriting expert, *standing alone,* is insufficient to overcome direct and positive *factual* evidence of the two subscribing witnesses: *Porter's Estate,* 341 Pa. 476, 19 A. 2d 731."

The philosophy of the doctrine that opinion testimony alone will not overthrow testimony of actual fact is well expressed by Mr. Chief Justice DREW in *Ray,* to use, *v. Philadelphia,* 344 Pa. 439, 441, 442, 25 A. 2d 145: "An opinion is only that; it creates no fact. It is what someone thinks about something, and the thought may be precisely accurate or totally inaccurate, and yet represent the absolutely honest conviction of the person who expresses it. Because of this, opinion evidence is generally considered of a low grade, and not entitled to much weight against positive testimony of actual facts. There is a great difference between factual and opinion testimony. In the one the witness testifies to the fact and certifies that what he says of it is true. In the other, he only testifies to his opinion that such a thing is true, and certifies only to his integrity of belief. He says he believes his opinion to be correct, but he does

312

not warrant it to be true, and does not pretend that he cannot be mistaken."

As the *opinion* evidence of contestants, standing alone, does not overcome the factual and unimpeached testimony of the three attesting witnesses (also supported by opinion evidence), proof of the forgery of testatrix's signature to the questioned writing has not been established.

Appellants rely upon *Lare Will*, 352 Pa. 323, 42 A. 2d 801. But in that case there was no testimony of the *fact* of execution. An issue was there granted because the *opinion* evidence, as well as other evidence, was conflicting. The question in that case was whether a hearing judge could refuse an issue because he did not believe one side or the other and thus become a finder of fact. This Court held he could not. In *Young Estate*, 347 Pa. 457, 32 A. 2d 901, the evidence of subscribing witnesses *was* impeached because in addition to expert *opinion* testimony of forgery there was direct and positive *proof* of actual fraud.

Decree affirmed at appellants' cost.