Snedeker Estate.

Argued September 26, 1951. Before DREW, C. J.,
STERN, STEARNE, JONES, BELL, LADNER and CHIDSEY, JJ.

*Benjamin Ludlow,* with him *James W. Cullen* and
*John P. Vallilee,* for appellant.

*Chas. M. Culver,* with him *W. G. Schrier, J. Roy
Lilley* and *Romeyn F. Culver,* for appellee.

608

OPINION BY MR. CHIEF JUSTICE DREW, November 13, 1951:

Lucy M. Snedeker died testate on August 8, 1948. Her will was admitted to probate by the Register of Wills of Bradford County and thereafter S. Gayle McKean Rowland, decedent's niece and next of kin, filed an appeal in the Orphans' Court alleging forgery by insertion and undue influence by one William P. Wilson, executor and remainderman under that will. The learned court below refused to grant an issue d.v.n. on either ground and dismissed the appeal. From that order contestant has appealed to this Court.

The oft repeated rule is that an issue d.v.n. will only be granted where there is a substantial dispute upon a material matter of fact: *Conway Will,* 366 Pa. 641; *Lewis Will,* 364 Pa. 225, 72 A. 2d 80; *Sturgeon Will,* 357 Pa. 75, 53 A. 2d 139. Here a careful review of the record reveals that no such substantial dispute exists and for that reason the lower court properly dismissed the appeal.

In 1929 testatrix and her mother went to Towanda to live and lived there with Wilson, the proponent. Her mother died in 1942 but testatrix continued to live in Wilson's home until her death in 1948 at the age of 80. During that time Mr. Wilson, a reputable member of the bar, attended to all of her legal and financial affairs. No fees were charged for these services. Early in July of 1937 testatrix spoke to Wilson about preparing a will and while sitting at her kitchen table he wrote out a will in longhand as she gave him the information. He then left it with her to read and see if it conformed to her wishes. On July 9, 1937, she came to his office with the will and told him that it was all right and that she wished to sign it. At that time he offered to have it typewritten and put in the usual form. She stated that would be unnecessary, that she could

sign the handwritten copy which she did in the presence of two witnesses both of whom testified to the fact of execution. The will was left in Wilson's possession until September 16, 1946 when at the request of the testatrix it was turned over to her and was found among her possessions after her death.

The sixth and last paragraph of that will provides: "It is my intention as the first object and purpose of my bounty to provide, as stated for the comfort and necessities of Laura B. McHenry and S. Gayle McKean Rowland, for their lives, and untill I shall decide by codicil to do otherwise, I give and bequeath and devise all the residuum of my estate to Wm. P. Wilson and name him as my Executor of my will to full carry out the trust and full purposes." Immediately following that paragraph is the signature of testatrix.

It is contestant's contention that all that was written after "untill I shall decide by codicil to do otherwise" was added by Wilson after testatrix signed the will. To support this position contestant relies solely on the testimony of a handwriting expert who testified that the tail of the first "p" in "purposes" overlapped the "k" in testatrix's signature and that the "p" had been written after the "k". From this contestant argues that all of the disputed clause must have been added after execution otherwise the will would not be coherent.

At the outset we must state that we have scrutinized the will most carefully but are unable to determine from that study whether the two letters overlap or merely touch. We must therefore rely, as would a jury if an issue were to be granted, on the testimony and evidence in the record to determine the question raised 'by contestant. Opinion evidence by an expert is, of course, admissible but as we said in *Henry's Estate*, 276 Pa. 511, 513, 120 A. 454, "opinion evidence, standing

alone, as it did, would not sustain a finding of forgery, in the face of the direct and credible evidence . . . Were the direct evidence discredited, or the opinion evidence strengthened by facts and circumstances, the case might be different." See also *Young Estate,* 347 Pa. 457, 459, 32 A. 2d 901; *DeLaurentiis's Estate,* 323 Pa. 70, 76, 186 A. 359. In this case one of the subscribing witnesses, one Shay, testified that he did not think there were any blank spaces above her signature. Wilson, who was called by contestant as for cross-examination, stated positively that he had written the whole will and that nothing had been added after she signed the will except the date and the phrase "in the presence of". Both of these were written immediately after she signed the will and neither, of course, affects its validity. Thus the direct evidence was contrary to the expert testimony and we find nothing in the record tending to discredit that evidence. On the contrary, the only inferences deducible from the evidence strongly support Wilson, the proponent.

The will was in the possession of testatrix for two years immediately prior to her death and was found among her belongings after she died. Certainly, had an alteration been made prior to that time she would have discovered it and either deleted that portion or had the will redrawn. If, on the other hand, it is contestant's position that the insertion was made after testatrix was removed to a nursing home shortly prior to her death, then the testimony of the expert witness becomes incredible. He stated that the purported alteration was written in the same hand and with the same pen and ink as the remainder of the will. While it is quite possible that a person might be using the same pen after eleven years, it is certainly highly unlikely that a lawyer, who uses his pen constantly, would still be possessed of the exact same ink.

Contestant also seeks to make much of the manner in which the will was found. Several days prior to her death testatrix was removed to a nursing home. At that time a neighbor went through a chest of drawers in which testatrix kept her things to obtain the necessary clothing. Immediately following her death, contestant and her mother did likewise to select suitable clothes for burial purposes. All testified that they saw no will at that time. Thereafter, no will having been found in her safe deposit box, letters of administration were obtained and appraisers appointed by the administrator. When the appraisers were going through the chest of drawers they came upon some personal papers and among these the will was found. We see nothing unusual in this. The case of *Culbertson's Estate*, 301 Pa. 438, 152 A. 540, is in no way analagous to this situation. There a purported will was found in a bureau drawer which had previously been thoroughly searched to no avail by persons expressly seeking a will. We held that that fact tended to corroborate direct evidence of forgery. Here no previous search had been made in the chest for a will. The examination made by the neighbor and by contestant and her mother were solely for the purpose of finding clothing. It is common knowledge that in times of distress many things may be overlooked which would otherwise be readily apparent.

Furthermore, an examination of the terms of the will reveals the improbability of a forgery by Wilson. The will provided that the estate was to be held in trust with the income payable to contestant during her lifetime. Wilson was merely named as the remainderman. Only if he outlived contestant would he stand to benefit. At the time the will was drawn, contestant was 35 years old and Wilson 66. It is inconceivable that he, being fully cognizant of the terms of

the will, would risk his reputation by fraudulently altering a will in the remote possibility that he might outlive a person thirty-one years his junior.

In regard to the question of undue influence, much of contestant's argument is based on a mistaken impression of the law. The court below found, and under the evidence could not have done otherwise, that a confidential relationship existed between Wilson and testatrix. Contestant argues that having established that fact the burden shifted to proponent to show that he did not improperly influence testatrix. The cases cited by contestant in support of this proposition are all cases of inter vivos transactions between the parties. The same rule however does not apply as to testamentary provisions: *Phillip's Estate,* 244 Pa. 35, 44, 90 A. 457. The rule applicable in will contests is clearly enunciated in *Quein Will,* 361 Pa. 133, 145, 62 A. 2d 909, where we said: "Where there is no evidence of *weakened intellect* the burden is upon those asserting undue influence to prove it even though the bulk of the estate is left to those occupying a *confidential* relation. . . . But where there is evidence of *confidential* relation coupled with a *weakened mind,* the burden of proof shifts to proponents." Here it is admitted that testatrix was of sound mind and the burden of proving undue influence at all times remained on contestant. This burden she did not meet. In fact, she proved nothing more than that proponent had the opportunity to exercise influence over testatrix, a fact which is true in every instance of confidential relationships. Proof of opportunity alone is never sufficient to prove undue influence.

Contestant completely failed to show any substantial dispute on any material matter of fact and her appeal was, therefore, properly dismissed.

Order affirmed. Costs to be paid by contestant.