Kadilak Will.

Argued September 27, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*Myron E. Rowley,* with him *Ralph E. Smith, James E. Rowley, Richard P. Steward,* and *Rowley, Smith & Rowley,* for appellant.

*Robert L. Orr,* with him *Reed, Ewing, Orr & Reed,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, November 14, 1961:

This appeal raises the question of whether the Orphans' Court abused its discretion in refusing an issue d.v.n.

Andrew Kadilak died on November 17, 1959. On November 24, 1959, an instrument dated October 12, 1953, was admitted to probate as his last will and testament. Three days later, on November 27, 1959, another instrument dated the ———— day of May, 1957, was also admitted to probate as decedent's last will and testament. The alleged will dated October 12, 1953, hereinafter referred to as the first will, was found in the decedent's safe deposit box in a bank. Two or three days later the alleged will of 1957, hereinafter referred to as the second will, was found in a leather pouch (envelope) in the general safe of decedent's bank. It had been delivered by decedent to his son, Steve Kadilak, to keep for him; a couple of months later and a month before decedent's death, Steve delivered the pouch to a girl employee of the bank and it was thereafter kept in the general safe of the bank. One of decedent's five* children, Agnes Kadilak Marcum and William Marcum, her husband, have appealed from the decree of probate of the second will. The contestant, Agnes Kadilak Marcum, was left by the first will de-

---

* Actually six, but Pauline Kadilak (Sister Mary Renita), being a member of a religious order, notified the Court she did not desire to become a witness or appear in these proceedings.

cedent's house and lot at 637 Beaver Avenue, Midland, Beaver County, Pennsylvania, and all furnishings contained therein. The net value of this house and its furnishings is undetermined. Agnes' husband was given $500 to be used for decedent's burial expenses. After a pecuniary legacy to each of his children in different amounts, testator left his residuary estate to his children share and share alike.

In the second will, decedent directed his real estate to be sold and from the proceeds of sale, together with all other money he had, he made the following bequests:

(a) To his daughter, Pauline (Sister Mary Renita), $1,500; in the first will she was given nothing;

(b) To his daughter, Margaret, $250; in the first will he gave her $1,000;

(c) To his daughter, Agnes, $125; in the first will he had given her his house and furnishings located at 637 Beaver Avenue;

(d) To his son, Joseph, $325, and his son, Robert, $325; in the first will testator had given his sons Joseph and Robert his house and lot and all furnishings in the same, located at 641 Beaver Avenue.

(e) All the balance of his estate in equal shares to his five named children, excluding Sister Mary Renita; in the first will testator gave his residuary estate in equal shares to all his children.

In each will, testator named his daughter Margaret executrix.

The sole contention of the contestants is that the decedent's alleged signature on the second will was not genuine, but forged.

To prove the charge of forgery, contestants produced three witnesses: (1) Agnes Marcum, the contestant, who testified that the challenged signature was not her father's signature; (2) Robert Kadilak, a son of decedent, who, when asked if the challenged signature was

that of his father, replied, "I couldn't swear to it. It might be and it might not be"; and (3) E. H. Fearon, a handwritting expert, who made a comparison of the disputed signature with admittedly genuine signatures of the decedent and who gave his opinion that the challenged signature was not genuine. It is important to note that the opinion evidence of Fearon, who was 83 years of age, was weakened by his testimony that in his opinion the signature of the two subscribing witnesses to the second will were forgeries. Fearon's opinion as to the forgery of the signatures of the subscribing witnesses was in flat contradiction of their direct and positive testimony.

Testimony in support of the second will was given (1) and (2) by two disinterested witnesses, namely Madzen and Tenley. Madzen and Tenley each testified that while they did not see the decedent sign the second will, they affixed their names to it as subscribing witnesses at the request of and in the presence of the decedent, who told each of them that it was his signature. Further testimony in support of the second will was given (3) by decedent's daughter, Margaret Kadilak Hanley, who testified that the signature to the will was that of her father and that the will was signed by him in her presence, although she was not a subscribing witness;* (4) by decedent's son, Stephen Kadilak, who testified that he had seen his father sign his name many times and was familiar with his signature, and the signatures on the two wills "both look alike to me"; and with reference to the disputed signature on the second will, "as far as I know that is my father's signature"; (5) by decedent's son, Joseph Kadilak, who testified that the signatures on the two instruments "appear to be the same"; and (6) by attorney William Coghlan, a respected member of the Beaver County Bar, who had

---

* Perhaps because of an erroneous belief among laymen that a legatee cannot be a subscribing witness.

performed legal services for decedent in his lifetime and had prepared decedent's first will. Coghlan testified that he was familiar with the decedent's signature and identified the signature on both wills as that of the decedent.

The Judge of the Orphans' Court, after hearing all the evidence and seeing the witnesses, refused to grant an issue d.v.n. and in his opinion said: "We are of the opinion and find as a fact that the contestants' opinion evidence, including that of the expert witness, does not overcome the unimpeached evidence of the two disinterested witnesses who testified that decedent acknowledged to them it was his signature and the evidence of the daughter, Margaret Hanley, that her father signed the will in her presence as well as the opinion evidence of the other witnesses that it was the decedent's genuine signature. We are further of the opinion that the evidence, on the present record, considered as a whole does not raise a substantial and material dispute of fact sufficient to justify a verdict in favor of the contestants and that if an issue were awarded a verdict in favor of the contestants would have to be set aside as against the weight of the evidence. See Molden Will, 387 Pa. 484.

"For these reasons, we are of the opinion that the appeal from the probate of the will of October 12, 1953, should be sustained and that the appeal from the probate of the will of the ——— day of May, 1957, should be denied."

Contestants, who are the appellants, contend that the testimony of Fearon, the handwriting expert, plus the suspicious circumstances, namely, the place where the second will was found; and the presence of a number of staple holes in each sheet of the second will, which thereby showed that this will must have been tampered with; plus an apparent contradictory statement of Madzen; plus the fact that the scrivener of the

second will was not produced,* are sufficient to justify and require the grant of an issue.

We shall consider the evidence and the question involved in the light of the following well settled principles of law.

"The *test*—so far as the contestants are concerned— as to whether or not an issue [devisavit vel non] should be granted by the hearing judge of the Orphans' Court** is whether the evidence, *considered as a whole,* raises *a substantial and material dispute of fact* sufficient to justify a verdict in favor of contestants which the Judge, upon a consideration of the entire evidence, would approve: Conway Will, 366 Pa. 641, 79 A. 2d 208; Lare Will, 352 Pa. 323, 42 A. 2d 801; Johnson Will, 370 Pa. 125, 87 A. 2d 188; Zakatoff Will, 367 Pa. [542, 81 A. 2d 430]; Higbee Will, 365 Pa. 381, 75 A. 2d 599; Sturgeon Will, 357 Pa. 75, 53 A. 2d 139; De-Laurentiis's Estate, 323 Pa. 70, 186 A. 359; Ross Will, 355 Pa. 112, 49 A. 2d 392": *Molden Will,* 387 Pa. 484, 500, 128 A. 2d 568.

The party relying on fraud or forgery has the burden of proving the facts upon which the alleged fraud or forgery is based and these facts must be proved by evidence which is clear, direct, precise and convincing: *Molden Will,* supra; *Petro v. Secary Estate,* 403 Pa. 540, 543, 170 A. 2d 325; see also: *Williams v. Mc-Carroll,* 374 Pa. 281, 292, 97 A. 2d 14.

Moreover, opinion evidence of an expert, whether he be a doctor or any other kind of expert, is, in cases of forgery, undue influence, mental capacity and insanity, of very little weight and cannot prevail against direct factual credible evidence: *Pochron Will,* 367 Pa.

---

* The reason for the failure to produce the scrivener was explained by appellee at the bar of the Court, but since it was not a part of the record and was not admitted by appellant, it will not be considered.

** Who, in such cases, is frequently referred to as a Chancellor.

306, 80 A. 2d 794; *Peterman Will,* 367 Pa. 302, 80 A. 2d 792; *Porter's Estate,* 341 Pa. 476, 19 A. 2d 731; *Snedeker Estate,* 368 Pa. 607, 84 A. 2d 568; *Sturgeon Will,* 357 Pa. 75, 53 A. 2d 139; *Cookson's Estate,* 325 Pa. 81, 88, 188 A. 904; *De Maio Will,* 363 Pa. 559, 563, 70 A. 2d 339; *Commonwealth v. Woodhouse,* 401 Pa. 242, 259, 260, 164 A. 2d 98.

Upon appeal to this Court the chancellor's decision will not be reversed unless there appears to have been an abuse of discretion or a fundamental error in applying the correct principles of law: *Molden Will,* 387 Pa. 484, 500-501, 128 A. 2d 568; *Williams v. McCarroll,* 374 Pa. 281, 298-299, 97 A. 2d 14, and numerous cases cited therein; *DeLaurentiis's Estate,* supra; *Masciantonio Will,* 392 Pa. 362, 141 A. 2d 362.

We agree with the lower Court that considering all the evidence in the light of the foregoing authorities it was clearly insufficient to raise a substantial and material dispute which would justify the granting of an issue. Certainly it cannot be said that the lower Court abused its discretion.

Decree in each appeal affirmed; appellant to pay the costs.