Smith Estate.

Argued November 27, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*C. William Kraft, III,* with him *Michael T. McDonnell, Jr., James E. Beasley,* and *Beasley, Albert, Hewson & Casey,* for appellant.

*Garland D. Cherry,* with him *Joseph M. Fioravanti,* and *Kassab, Cherry and Archbold,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, January 24, 1974:

This is an appeal from a decree of the Orphans' Court Division of the Court of Common Pleas of Delaware County holding that a will admitted to probate by the Register of Wills was neither a forgery nor invalid by reason of a material alteration.

By a will drawn March 11, 1967, decedent, then seventy-nine years of age, gave his entire estate to his twenty-eight year old nurse, Billie Hetrick, appellant herein. On April 3, 1967, twenty-three days later, decedent executed a second will, leaving his entire estate to his only surviving heir-at-law, his fifty-eight year old son, Vincent. The decedent died on June 17, 1968;[1] Vincent Smith offered the will dated April 3, 1967, for probate; Billie Hetrick filed objections and, after taking testimony, the Register of Wills dismissed the objections and admitted the April 3 will to probate.[2] Billie Hetrick appealed under Section 208 of the Orphans' Court Act of June 30, 1972, P. L. 164, §3, 20 Pa. S. §§701-794 (1973). The Orphans' Court Division held

---

[1] Shortly thereafter, decedent's attorney, Mr. Pappano, who had been holding the latter will, filed a caveat with the Register of Wills of Delaware County on behalf of Vincent Smith.

[2] The Register, in an opinion dated March 12, 1969, determined that the April 3, 1967, will, leaving the entire estate to Vincent, was authentic.

hearings de novo and affirmed the action of the Register of Wills.[3]   This appeal followed.

Appellant maintains that the April 3, 1967, will was improperly admitted to probate because decedent's signature was forged and because other material alterations were made.[4]   She contends that five separate and distinct defects in this document preclude it from being a properly executed document: (1) the numeral 7 of 1967 on the face of the will was typed over another character that had been erased; (2) the backer on the will has additional staple holes and scratches indicating its removal from an existing document and replacement on a different one; (3) the scrivener testified that the will was typed by his secretary on a Remington typewriter, but it was actually typed on an IBM typewriter; (4) the decedent's signature was made with a fountain pen, but dots and holes, filling in an outline of that signature and uniquely peculiar to a ballpoint pen, appear on the will;[5] (5) impressions on page 2 of the will did not match up with underlinings which appeared on page 1.

The law is clear that the party contesting the admission of a will to probate has the burden of proof in challenging the validity of the will. *Simon's Estate*, 381 Pa. 284, 113 A. 2d 266 (1955).   To prove a motive for the forgery appellant introduced evidence that the decedent lived with her, loved her, planned to marry her,

---

[3] During the course of the litigation, two separate appeals were taken by the appellant to this Court. One was quashed and the other, reported as *Smith Estate*, 442 Pa. 249, 275 A. 2d 323 (1971), was deemed interlocutory and not appealable.

[4] Appellant also argues that the chancellor improperly denied her petition for a change of venue; however, that issue was considered and decided in *Smith Estate*, 442 Pa. 249, 275 A. 2d 323 (1971), and hence it is not properly raised by appellant in this appeal.

[5] This technique is a common method of forgery.

and intended to "leave everything to her."[6]  She also introduced evidence of decedent's disparaging remarks about his son, Vincent, in an effort to show his lack of love and concern for Vincent.  Appellant presented uncontroverted evidence that a valid will naming her as beneficiary was prepared by her attorney and signed by decedent on March 11, 1967.[7]  However, the appellee's evidence indicates that, after executing the March 11, 1967, will, decedent telephoned his attorney, Mr. Pappano, told him that he had signed some papers at Billie's request, and asked him what to do in the event that he had signed another will so that his son would remain the sole beneficiary.  Mr. Pappano directed him to write a new will and, accordingly, Mr. Pappano had his secretary type a new will reaffirming the provisions of the 1964 will.  Mr. Pappano testified that he and Dr. Glenn White, decedent's physician, witnessed the signing of this new will by decedent on April 3, 1967, in decedent's apartment.

Appellant introduced two handwriting experts in an effort to prove that the signature on the April 3 will was a forgery and that the will was materially altered. However, in *Cline Will*, 433 Pa. 543, 252 A. 2d 657 (1969), this Court recognized that in a will contest opinion evidence is of little value when weighed against positive evidence by witnesses whom the chancellor considers credible.  *See also Elias Will*, 429 Pa. 314, 329 A. 2d 393 (1968) ; *Pochron Will*, 367 Pa. 306, 80 A. 2d 794 (1951).

Although the facts of this case *might* have supported a contrary result, the record reveals that there is adequate testimonial support for the chancellor's findings and that the chancellor did not capriciously disbelieve the testimony, abuse his discretion, or commit an error

---

[6] In a twenty-two page opinion, the chancellor fully discussed all the factual evidence presented in the case.

[7] Prior to this date a will dated December 15, 1964, leaving everything to decedent's son was in existence.

of law. Consequently, our opinion in *Cline* and the restrictive scope of our appellate review compel us to sustain the instant decree in this respect.[8]

On the material alteration issue, appellant's expert witnesses opined that the number 7 in the date on the face of the will had been typed over another number that had been erased, that additional staple holes were present on the face of the will, that impressions on page 2 of the will did not match up with underlinings which appeared on page 1, and that the will was typed on an IBM typewriter whereas Mr. Pappano testified that his secretary typed it on a Remington typewriter. However, the chancellor was not impressed with the credibility of these experts and decided that appellant had not met her burden of proof.[9] It is well settled that: "The findings of fact by the Chancellor, approved by a court en banc, have the weight and effect of a jury ver-

---

[8] The facts of this case warrant such a result even more than did those in *Cline*. In *Cline*, the will was written and signed in the proponent's dining room in the proponent's presence. In the present case, the will was drafted by the decedent's attorney, and then signed in the decedent's apartment. In *Cline*, the decedent's sister initiated conversations leading to the drafting of the will. In this case, the decedent initiated the conversations with respect to a new will, when he telephoned his attorney. In *Cline*, the decedent's sister (proponent's aunt) signed as a witness to the will, while in the instant case decedent's lawyer and his doctor signed as witnesses. In *Cline*, the scrivener was the beneficiary and the execution occurred in her house, whereas in this case appellee had nothing to do with the writing or execution of the new will. In *Cline*, the contestants called the decedent's daughter, a banker, a lawyer and a handwriting expert, all of whom agreed that the decedent's signature was a forgery. Also in the present case, a handwriting expert from the Pennsylvania State Police testifying on behalf of appellee examined the disputed document, compared it with decedent's signature on other authenticated documents and testified it was genuine.

[9] The chancellor was influenced not only by the contradictory conclusions of the two experts on the forgery of the signature but also by other circumstances surrounding their testimony. For instance, one expert who testified that the signature was genuine but the pages of the will had been substituted was later confronted with

dict and must be accepted at the appellate level unless such findings lack evidentiary support or unless the Chancellor has capriciously disbelieved evidence or abused his discretion or committed an error of law." *Cline Will,* 433 Pa. 543, 547, 252 A. 2d 657, 660 (1969). *See also Elias Will,* 429 Pa. 314, 329 A. 2d 393 (1968); *Zeedick Will,* 421 Pa. 44, 218 A. 2d 755 (1966); *Kadilak Will,* 405 Pa. 238, 174 A. 2d 870 (1961).

Again the record contains evidentiary support for the chancellor's findings and we do not believe the chancellor abused his discretion in making such findings.

Decree affirmed. Appellant to pay costs.

---

his own notes of his previous study wherein he said directly the opposite.