474 A.2d 290

## In re Warren R. KIRKANDER, Deceased.

### Appeal of Carolyn KIRKANDER and Karen Kirkander.

Superior Court of Pennsylvania.

Submitted Nov. 8, 1983.

Filed March 9, 1984.

Reargument Denied May 16, 1984.

382

Douglas G. Linn, II, Butler, for appellant.

Leo M. Stepanian, Butler, for participating party.

Before CAVANAUGH, CIRILLO and CERCONE, JJ.

CERCONE, Judge:

This is an appeal from the final decree of the Court of Common Pleas of Butler County, Orphans' Court Division, dismissing the appeal of appellants, Carolyn and Karen Ann Kirkander (contestants) from the probate of the Will of Warren R. Kirkander (decedent). We reverse.

Decedent passed away on August 9, 1976. His will leaving his entire estate to Jean Lam (proponent), was admitted to probate on August 25, 1976. On August 24, 1978 contestants filed an appeal and challenge to the probate of the will alleging that the will was the product of undue influence or in the alternative was a forgery. The Orphans' Court dismissed the appeal finding that the statute of limitations for bringing the challenge was one year, and such period had expired. 20 Pa.C.S.A. § 908(a). On appeal to the Supreme Court, the court reversed the decree, finding that while the claim of undue influence was barred by contestants' untimely petition, the claim of fraud was not. *In Re Kirkander's Estate*, 490 Pa. 49, 415 A.2d 26 (1980).

Upon remand, the Orphans' Court conducted hearings on December 5, 1980 and November 6, 1981. On December 17, 1981, the court entered a *decree nisi* dismissing appellant's appeal alleging fraud. Exceptions were filed and by order of March 15, 1982 the exceptions were dismissed and the *decree nisi* was confirmed as a final decree. From such final decree contestants have taken this appeal raising four contentions. Finding merit to the contestant's first contention, we need not address the other issues.[1]

---

1. The other contentions raised are:
   a. the Orphans' Court should have recused itself and sought the appointment of a special chancellor from outside of Butler County;
   b. the court erred in denying a continuance; and
   c. the evidence does not support the chancellor's finding.

■ The contestants argue that the trial court erred, in prohibiting testimony regarding oral declarations of decedent regarding his estate plan uttered shortly before his demise, in refusing testimony concerning decedent's and the proponent's relationship; and in refusing contestants' proffered testimony regarding the proponent's suspicious conduct. The Orphans' Court believed it was limited in conducting the evidentiary hearing to the forgery issue and therefore limited the hearing solely to the execution of the alleged forged will.

The proponent offered testimony from: the scrivener who was also a subscribing witness; the scrivener's secretary, who typed the will and witnessed its execution; the proponent, who went with the testator when he initially discussed the drafting of the will and was present at its execution; and a bank employee who testified that testator was the only person who had access to the safe deposit box containing the will.[2] The contestants' case was limited to the cross-examination of the above witnesses and to the testimony of a hand-writing expert. We believe the Orphans' Court placed an unduly restrictive interpretation upon the Supreme Court's directive. That court after upholding the dismissal of the challenge premised on undue influence, remanded for an evidentiary hearing on the allegation of fraud. The only restriction placed on such hearing was that it be "consistent with this opinion."

■ We recognize that rulings on the admissibility of evidence are within the discretion of the trial judge and will not be reversed absent a manifest abuse of that discretion. *Abbott v. Steel City Piping Co.*, 437 Pa. 412, 263 A.2d 881 (1970); *Capan v. Divine Providence Hospital*, 270 Pa.Superior Ct. 127, 410 A.2d 1282 (1979). However, where the

As to the question of recusal we note that a moving party must demonstrate the necessity for the disqualification and appellants failed to carry such burden. *Commonwealth v. Perry*, 468 Pa. 515, 364 A.2d 312 (1976).

**2.** Proponent was authorized to open the box in case of an emergency but records demonstrated that she never exercised that right.

excluded evidence was essential to a party's case, the reviewing court may find an abuse of discretion. *Densler v. Metropolitan,* 235 Pa.Superior Ct. 585, 345 A.2d 758 (1975).

■ The party alleging forgery has the burden of proving the existence of the forged document by clear, direct, precise, and convincing evidence. *In Re Estate of Smith,* 454 Pa. 534, 314 A.2d 21 (1974); *Cline Will,* 433 Pa. 543, 252 A.2d 657 (1969); *Elias Will,* 429 Pa. 314, 239 A.2d 393 (1968); *Kadilak Will,* 405 Pa. 238, 174 A.2d 870 (1961). In the current case, contestants were limited to producing a handwriting expert, without the benefit of any corroborating circumstantial evidence. As is well established in this Commonwealth, found by the Orphans' Court and admitted by contestants, expert evidence standing alone concerning the authenticity of an alleged forged signature is of little weight and can not prevail against direct credible evidence regarding the signing of the questioned document. *Estate of Smith, supra, Elias Will, supra, Kadilak Will, supra, Snedeker Estate,* 368 Pa. 607, 84 A.2d 568 (1951); *Pochron Will,* 367 Pa. 306, 80 A.2d 794 (1951). *See also* 42 Pa.C.S.A. § 6111.

■ However, just as well established is the principle that where the testimony of a handwriting expert is corroborated by probative facts and circumstances surrounding the will, such may overcome the testimony of the subscribing witnesses. *Cline Will,* 433 Pa. 543, 252 A.2d 657 (1969); *Snedeker Estate, supra,; Young's Estate,* 347 Pa. 457, 32 A.2d 901 (1943); *De Laurentiis's Estate,* 323 Pa. 70, 186 A. 359 (1936). As the court stated in *Young's Estate, supra* 347 Pa. at 463, 32 A.2d at 904:

There is no law requiring that in cases such as this the evidence to be "corroborated" must be of such a "direct and positive" character as to consist of the testimony of some one who was with the decedent at all times when the questioned document could have been executed by [the decedent] and who positively swears that the decedent did not execute the document. In such cases posi-

tive and direct evidence is the most nearly positive and direct evidence which the nature of the case will admit. *Young's Estate*, limits the admissibility of such evidence to that evidence admissible under the ordinary rules of evidence. Here, the Orphans' Court found the proffered, but rejected evidence, was irrelevant to the question of whether the will was genuine.

Evidence is relevant if it tends to establish facts in issue or in some measure advances the inquiry and thus has probative value. *Dudash v. Dudash*, 313 Pa.Superior Ct. 547, 460 A.2d 323 (1983); *Commonwealth v. Sinwell*, 311 Pa.Superior Ct. 419, 457 A.2d 957 (1983); *Whistler Sportswear, Inc. v. Rullo*, 289 Pa.Superior Ct. 230, 433 A.2d 40 (1981). We find that the evidence at issue here was relevant, at least in part, to the controversy over the testator's signature.

A decedent's utterance regarding his planned disposition of his estate, said after the questioned will was supposedly executed, has been admitted in a will contest; since, if a will is to be admitted to probate, a decedent must have been aware of its contents. *Cohen Will*, 445 Pa. 549, 284 A.2d 754 (1971). *See also Young's Estate, supra; De Laurentiis's Estate, supra; Lappe v. Gfeller*, 211 Pa. 462, 60 A. 1049 (1905). Therefore, contestants should have been allowed to introduce testimony concerning statements allegedly made by the decedent regarding his testamentary scheme.

Similarly, we find that court should not have refused testimony of, what is referred to as, "suspicious" conduct on the proponent's part. While it is true that suspicion and conjecture do not take the place of evidence, *Elias Will, supra; Pochron Will, supra;* suspicious or unusual conduct of an interested party or otherwise surrounding a will may, when viewed in conjunction with other evidence, raise a question as to the validity of a will. *Young's Estate; supra; De Laurentiis's Estate, supra. See also Cline Will, supra; Kadilak Will, supra* (where

the respective Orphans' Court considered such evidence but found it unpersuasive).

The third type of evidence which the chancellor would not allow contestants to present concerned the relationship between the decedent and the proponent. Evidence of the relationship between a testator or testatrix and a named beneficiary has been admitted where the will is claimed to be a forgery. *Snedeker Estate, supra; De Laurentiis's Estate, supra.* However, contestants' proffered testimony dealt with the deterioration of the relationship between testator and proponent; it focused upon their status at the time of, or shortly before, the testator's death. We do not find error in the chancellor's refusal to admit this evidence. Unless such testimony pertains to the point in time *when the will was executed,* we fail to see how such was relevant. *Estate of Bryner,* 464 Pa. 10, 345 A.2d 706 (1975); *Thomas Estate,* 457 Pa. 546, 327 A.2d 31 (1974).

We must conclude that the Orphans' Court abused its discretion in unduly restricting the hearing before it and hence we are constrained to remand for further proceedings. We do not at this time offer any comment upon the substantive merits of appellant's challenge to the will. Instead, we conclude, borrowing language from *De Laurentiis's Estate, supra,* 323 Pa. at 80, 186 A. at 363–64:

It may, of course, be true that [contestants'] testimony is a fabrication, that the handwriting experts are mistaken, and the seemingly strange provisions of the will are susceptible of satisfactory explanation, but if under such circumstances and evidence a contestant is not to be allowed to have [the fact finder] pass upon his case, it would apparently be impossible to secure the opportunity of establishing that an alleged signature to a will was in fact a forgery, it being only in the rarest cases that direct and irrefutable testimony of a witness to the very act of forgery could be obtained. Considering the personnel of the witnesses, this seems to be peculiarly a case to which there may properly be applied the statement of the court in *Sharpless's Est.,* 134 Pa. 250, 261 [19 A. 630], that: "So

much depends on the means of knowledge, the interest of bias, the manner, the character, and the personal weight which each witness carries as an individual among his neighbors and in the community, that a [fact finder] is the only appropriate tribunal, in such a case, to determine which way the balance inclines. Having the testimony present to [its] eyes as well as [its] ears, the truth may be made manifest beyond any substantial doubt.... To decide it now, as presented, would be to decide it in the dusk, if not in the dark, when full daylight is at hand."

Decree reversed, case is remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.