**In re:  Estate of Orlando PRESUTTI, Deceased.**

**Appeal of:  Olga Ostanski Zarko.**

Superior Court of Pennsylvania.

Submitted June 25, 2001.

Filed Sept. 6, 2001.

Robert E. Draper, Pittsburgh, for appellant.

John E. Quinn, Pittsburgh, for appellee.

BEFORE: DEL SOLE, President Judge, McEWEN, President Judge Emeritus and POPOVICH, J.

POPOVICH, J.:

¶1 This is an appeal from the order entered on December 19, 2000, in the Orphans' Court Division of the Court of Common Pleas of Allegheny County. Upon review, we affirm.

¶2 The relevant facts and procedural history follow. On May 4, 1998, by decree of the Register of Wills of Allegheny, Letters of Administration were granted to Aline M. Criner, niece of the decedent, Orlando Presutti. On May 15, 1998, the document presently at issue was admitted to probate as the last will and testament of Orlando and Stella Presutti, and Letters Testamentary were granted to appellant, Olga Ostanski Zarko, sister-in-law of the decedent. On July 31, 1998, appellees, nieces and nephews of the decedent, filed a timely notice of appeal of the order of the Register of Wills from the decree probat-

ing the document as the will of the decedent. A trial followed on August 10, 1999.

¶3 The issue at trial was whether the decedent executed a holographic will while visiting appellant and her husband on May 1, 1982. Testimony at trial revealed that the decedent and his wife, Stella Presutti, were visiting the Zarkos at their home in Burlington, Illinois, when the document in question was allegedly executed. After a dinner celebrating the anniversary of appellant and her husband, Mrs. Presutti went into the kitchen and retrieved a notepad. She then wrote on the notepad and presented what she had written to the decedent. She asked, "Is this okay?" He responded that it was and signed the document. The document stated: "To whom it may concern, all our worldly possessions are (sic) leave to Olga Ostanoski Zarko to dispose as she sees fit. Being of sound mind, signed-Stella Ostanoski Presutti, Orlando Presutti." Appellant placed the document into her pocket and then into a dresser drawer in her bedroom where it remained for the next 16 years. The parties present when this document was composed were appellant, appellant's husband, son, daughter and the decedent and his wife. Mrs. Presutti died in 1997, and the decedent died in 1998.

¶4 Robert Zarko, appellant's husband, testified he witnessed Mrs. Presutti write the document and the decedent signing it. He also stated he observed Mrs. Presutti hand the document to appellant who showed it to him. He indicated the document at trial was the same one he saw that night. Appellant's daughter, Maria O'Connor, also testified and indicated she witnessed Mrs. Presutti writing on a notepad and then tear off a piece of paper and hand it to her uncle, the decedent. She also indicated that the decedent said it was okay and signed it. She did not read what was written on the paper and did not see

the disputed document until one month later. Appellant's son, Gary Zarko, also witnessed Mrs. Presutti and the decedent writing that night, but did not read the document until after the decedent's funeral when he was called upon to retrieve it from appellant's bureau.

¶ 5 The decedent's nieces, Ailne Criner and Kathleen Lazzari, also testified. Ms. Criner testified that prior to his death, the decedent asked her to be the executrix of his estate. She stated they discussed various details regarding the disposition of his estate approximately seven or eight times. She indicated the decedent stated to whom he wished to bequeath money and property and the preparatory steps he had taken to execute a will. She stated he never mentioned appellant's name or the existence of the will that appellant alleged was executed in May of 1982. Also, she stated that two days before his death, the decedent indicated to her that he would like to see an attorney about his will. Ms. Lazzari testified that she spoke with the decedent two days before his death, and that he indicated his intent to get his affairs in order through a trip to the bank.

¶ 6 A handwriting analysis expert, Sandy Stevens, testified for appellees. Appellant objected to her qualification as an expert witness but was overruled by the trial court. Ms. Stevens stated she used ten standard signatures of the decedent and compared them with the signature on the contested document. She found seventy-five discrepancies between the signature on the contested document and the undisputed signatures of the decedent. She concluded that the signature on the contested document was not that of the decedent. She also testified she believed, after comparing handwriting of appellant to the signature on the document, that appellant signed the decedent's name on the purported will.

¶ 7 Testimony at trial also revealed that after the decedent's funeral, the Zarkos searched his residence for a will. No will was found in either the decedent's residence or safe deposit box. Significantly, the Zarkos first mentioned the alleged holographic will after no will was found.

¶ 8 Following the trial, on July 21, 2000, the trial court issued an opinion and order finding for appellees and reversing the decree of the Register of Wills, which admitted the document in question to probate. On September 25, 2000, appellant filed exceptions to the court's order alleging the court's conclusions were not supported by competent and adequate evidence. On December 18, 2000, the lower court issued an order confirming the order of July 21, 2000, and denying appellant's exceptions. This appeal followed.

¶ 9 Herein, appellant raises the following issue for our review:

Whether the opinion and order of the Court of Common Pleas of Allegheny County was not supported by competent and adequate evidence and reflected an abuse of discretion relative to the weight afforded to testimony and (sic) trial?

Appellant's brief, p. 4.

¶ 10 Preliminarily, we note our standard of review when considering appeals from the Orphans' Court:

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of that discretion.

*In re Angle*, 2001 PA Super 144, 77 A.2d 114, 2001 Pa.Super. LEXIS 547 (citations omitted).

¶ 11 When the issue of a forgery is raised, the claimant or contestant of the will has the burden of proving the existence of a forgery by clear and convincing evidence. *In re Estate of Angier,* 381 Pa.Super. 114, 552 A.2d 1121, (1989), *see also In re Kirkander,* 326 Pa.Super. 380, 474 A.2d 290 (1984). Also, we note that because forgery presents an issue of fact, the resolution of the issue necessarily turns on the court's assessment of the witnesses' credibility. *In re Estate of Heiney,* 455 Pa. 574, 318 A.2d 700 (1974). Further, with regard to the testimony of a handwriting expert, we have held that where the testimony is corroborated by probative facts and circumstances surrounding the will, such may overcome the testimony of the subscribing witnesses. *In re Kirkander, supra,* 474 A.2d at 293.

¶ 12 The trial court found the appellees met their burden of proving by clear and convincing evidence that the signature on the document in question was a forgery. The court considered testimony of witnesses close to the decedent near the time of his death as well as the opinion of a handwriting expert who compared the signature on the document to numerous undisputed signatures of the decedent.

¶ 13 The court's findings of fact are supported by the record. Testimony at trial revealed that the only witnesses who actually read the document in question on the evening of May 1, 1982, were appellant and her husband. The lower court noted, and we agree, that there were discrepancies in some of the details surrounding the evening's events in the testimony of appellant and her husband. Though these discrepancies were relatively minor, it is not within our purview to judge the weight to be afforded to them or the impact the discrepancies should have on the credibility of the witness' testimony. *See In re Estate of Heiney, supra.* Also, the trial court found it insignificant that appellant's children were present on the evening of the execution of the alleged will because neither actually read the contents of the document on that evening. Appellant's daughter did not become aware of the document's contents until thirty days later, and appellant's son did not the read the document until sixteen years later, after the decedent's death. Also, the court noted that appellant's daughter was twelve years old at the time the alleged will was composed.

¶ 14 The decedent's nieces testified that the decedent never mentioned the existence of the will to them when discussing the disposition of his property. Rather, he indicated his intention to create and execute a will. Ms. Criner testified that in the several conversations she had with the decedent, he advised her specifically to whom he wanted to bequeath certain items of property, and did not mention his desire to give any property to appellant. She also stated the decedent wanted to visit an attorney regarding the disposition of his property two days before he died. Ms. Lazzari also indicated that the decedent expressed a desire to get his affairs in order just prior to his death. Further, the document in question was never formalized in the sixteen years between its creation and the death of the decedent. Also, during the search of the decedent's residence following his death, appellant and her husband never mentioned the existence of the document they now claim to be his last will and testament. The document in question was not produced until after the search was completed.

¶ 15 Additionally, the court found the testimony of the handwriting analysis expert to be credible. Ms. Stevens testified that she compared the signature on the document in question with ten standard signatures of the decedent. She stated

she found seventy-five discrepancies between the signature on the contested document and the undisputed signatures of the decedent. She also compared the signature of Mrs. Presutti with her standard signature. She concluded that the signatures on the contested document were forgeries. Additionally, she stated that after reviewing appellant's handwriting samples and comparing them to the document in question, that it was her opinion that appellant forged the decedent's signature on the document.

¶ 16 Appellant claims Ms. Stevens was not qualified to testify as an expert, and that the court erred by considering her opinion. We have consistently held that the standard for evaluating the qualifications of an expert witness under Pennsylvania law is a liberal one. *Bindschusz v. Phillips*, 771 A.2d 803 (Pa.Super.2001) (citations omitted). The test to be applied when qualifying an expert witness is whether the witness has any reasonable pretension to specialized knowledge on the subject under investigation. *Id.* If he does, he may testify, and the weight to be given to such testimony is for the trier of fact to determine. *Id.*

¶ 17 Ms. Stevens indicated that she has been called to testify in court as an expert in the field of document examination over 200 times. She stated that, in every case, she had been qualified to render an opinion relative to the genuineness and authenticity of signatures. She also indicated that she has been allowed to provide an opinion in courts in New York, New Jersey, and Pennsylvania and that she testified on several occasions in the Court of Common Pleas of Allegheny County. She also testified that she was certified by the National Bureau of Document Examiners. She admitted the organization is now defunct because the president of the organization died, but stated that she planned on becoming a member of various other organizations for document examiners. The court concluded that she had sufficient specialized knowledge on the subject. We find that the record supports the court's conclusion and note that the weight to be given to her testimony was for the trial court to determine. *Bindschusz, supra.*

¶ 18 Thus, we conclude the findings of fact by the court are supported by the record and agree that appellees met their burden of proving by clear and convincing evidence that the document purported to be the decedent's will was in fact a forgery. Accordingly, we affirm the order of the Orphans' court.

¶ 19 Order affirmed.