**UNITED STATES of America,**
**Appellee,**

v.

**Orlando Gutierrez ACOSTA, Appellant.**

**No. 10610.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 5, 1966.

Decided Nov. 2, 1966.

Certiorari Denied Feb. 13, 1967.
See 87 S.Ct. 886.

Jerry T. Batts, Jr., Norfolk, Va.
(Court-appointed counsel), for appellant.

Roger T. Williams, Asst. U. S. Atty.
(C. V. Spratley, Jr., U. S. Atty., on the
brief), for appellee.

Before SOBELOFF, BOREMAN and
CRAVEN, Circuit Judges.

SOBELOFF, Circuit Judge

Appellant, Orlando Gutierrez Acosta,
was tried by the District Judge sitting
without a jury on an eight-count indict-
ment which charged him with uttering
four United States savings bonds after
having forged the endorsements thereon.
He was convicted and sentenced to three
years in prison on each count, the sen-
tences to be served concurrently.

Acosta was one of about a dozen sail-
ors of Philippine origin assigned to the
U.S.S. INTREPID. In August 1963, the
bonds in question were stolen from the
locker of one of the sailors. His identi-
fication card was also stolen and used
by the thief in cashing the bonds at the
Naval base branch of the Virginia Na-
tional Bank. The bank teller, however,
was unable to recall who had presented
the bonds to her and said she would be
unable to identify the person.

The defendant, who was stationed in
Florida at the time, was interviewed
there in March 1965 by two United
States Secret Service agents. In the
course of the interview the defendant, at
the agents' request, furnished them with
several specimens of his handwriting,
which were then forwarded to a docu-
ment examiner in the United States
Treasury Department. At the trial, the
sole evidence which the government had
to link the defendant with the offense
was the testimony of this document ex-
aminer, who stated positively that the
samples obtained from the defendant
were written by the same hand that
forged the endorsements on the bonds.

The defendant advances two ar-
guments on this appeal. The first con-
cerns the admissibility of the writing
samples obtained from him, the conten-
tion being that he was "compelled" to
furnish the specimens, and that this was
a violation of his Fifth Amendment priv-

ilege against self-incrimination. The government's response is that he furnished the handwriting samples voluntarily, and further, that the securing and the admission of handwriting samples in evidence is not within the scope of the privilege. The District Judge found as a fact that the defendant furnished the agents the handwriting samples voluntarily and after he was warned that he need not comply with their request. We will not disturb this finding since it cannot be said to be clearly erroneous. The Judge expressly stated that he believed the testimony of the agents and found that of the defendant to be incredible. Counsel suggested in argument that the defendant may not have understood the warning, since he spoke English imperfectly, but the record shows that the defendant had served in the United States Navy for four years, and had the equivalent of one year of college education. Since the defendant took the stand on his own behalf, it is evident that the District Judge was in the best position to assess the defendant's ability to comprehend the English language.

Inasmuch as we uphold the District Court's finding that the handwriting samples were given voluntarily, we do not find it necessary to reach the issue of whether compelling a suspect to execute handwriting specimens is a violation of his privilege against self-incrimination. Cf. Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), superficially, at least, a more extreme case than this, for there a blood sample was taken from the suspect's veins over his protest, yet the analysis was admitted in evidence.

The second point pressed by the defendant is that the testimony of the handwriting expert was insufficient to sustain the conviction. On its face, the document examiner's testimony is a firm foundation for the finding of guilt.[1] Handwriting identification can be as certain and dependable as any other identification.[2] While handwriting analysis may not be as scientifically accurate as fingerprint identification, it is, on the whole, probably no less reliable than eye witness identification which is often made after a quick glance at a human face. Naturally, when the record fails to furnish independent corroboration of guilt, the fact finder should receive the the handwriting testimony with heightened caution, but it cannot be said as a matter of law that such testimony, coupled with the trial judge's own observation of the exhibits, may in *no* event be found sufficiently persuasive.[3]

■ One may harbor some scepticism about the government witness' self-assured statement on cross-examination

---

1. "The circumstantial evidence afforded by the handwriting [as analyzed by expert witnesses] may in a given case be more convincing than the testimony of * * * [purported eye witnesses]. This possibility is one of the results of the modern scientific study of handwriting." 4 Wigmore, Evidence § 1302 (3d ed. 1940). See also In re Kisling's Estate, 68 Cal.App. 2d 163, 156 P.2d 57 (1945) ; In re Young's Estate, 347 Pa. 457, 32 A.2d 901, 154 A.L.R. 643 (1943).

2. "Whether [handwriting] * * * is a criterion of personality is debatable, but that it is individual to each and every person is an established fact. Therefore, it can be identified, and the identification is based upon all of the elements which combine to create its individuality." Hilton, Scientific Examination of Questioned Documents 136 (1956).

"Nothing else that a person does is so characteristic as the handwriting, and the identification of the individual can be established by it better than by portraits or almost any other means." Lavay, Disputed Handwriting 81 (1909).
"* * * with different handwritings— the peculiar and distinguishing characteristics of one would no more be present in others than would the personal counterparts of the authors be found in other individuals." Id. at 99.

3. In jury trials of criminal charges, where the only or major evidence is that of a handwriting expert, it is recommended that the trial judge instruct the jury upon request, or *sua sponte* if fairness seems to require it, that the testimony of the expert be closely scrutinized and accepted with caution.

that in thirty-five years he had never made a mistake in such a case, qualifying this statement only by the phrase "so far as I know." This recalls Justice Holmes' famous observation, made in another context, that certitude is not the test of certainty. But though we attribute human fallibility to handwriting experts as to other witnesses, the judge or jury hears them out and makes an independent judgment upon the reliability of their testimony. To qualify as a witness, the expert is not required to prove that he has achieved a record of perfection.

In this case defense counsel did not dispute the qualifications of the expert, and it was for the trial judge to weigh his testimony in light of the witness' demeanor and the total impact of his testimony. The expert took pains to support his statement concerning the common authorship of the forged endorsements and the samples of defendant's handwriting, by citing in detail the reasons for his opinion. He pointed out the similarities he thought significant and explained why certain dissimilarities, skillfully pressed upon him in cross-examination, were without significance. Moreover, the District Judge could take into account the poor impression apparently made upon him by the defendant on the witness stand, since there were a number of minor points in his testimony reflecting adversely upon his credibility. It is, in addition, worthy of note that a second handwriting expert, selected by the defendant and paid for by order of the court under the Criminal Justice Act, 18 U.S.C. § 3006A, likewise examined the samples obtained by the agents and the endorsements on the bonds, but did not testify at the trial.

■ The expert's testimony convinced the trier of fact beyond a reasonable doubt. An examination of the record and our own inspection of the handwriting samples do nothing to cast doubt upon the trial judge's finding, and indeed, seem to fortify it. The judgment is therefore

Affirmed.