Fabricant, J.
INTRODUCTION
The defendants are charged with offenses arising from alleged falsification of a will. The Commonwealth has indicated an intention to offer expert testimony at trial on the subject of handwriting comparison. The defendants seek to exclude such testimony on the ground that its reliability is not sufficiently established to meet the test of Commonwealth v. Lanigan, 419 Mass. 15 (1994), based on Daubert v. Merrell Dow Pharmaceuticals, 509 U. S. 579 (1993), as expanded in Canavan’s Case, 432 Mass. 304 (2000), based on Kumho Tire Co. v. Carmichael 526 U. S. 137 (1999). For the reasons that will be explained, the defendants’ motion will be denied.
DISCUSSION
The initial question raised by this motion is whether an evidentiary hearing is required or warranted. The Court concludes that it is not. The Court has before it the report of the proposed expert witness, John Breslin, of the New York Forensic Laboratory of the United States Postal Inspection Service, along with an affidavit of Mr. Breslin; an affidavit of Professor Moshe Kam, expressing the view that research establishes the reliability of expert handwriting comparison; and an affidavit of Professor Michael J. Saks, expressing the contrary view. Professors Kam and Saks appear to be among the leading sources on opposing sides of this issue in the reported cases; all of the decisions the parties have cited in which courts have taken evidence recount their testimony and/or cite their publications. Their affidavits set forth their views at length, and include their responses to each other’s views, with which they appear to be familiar. These materials provide ample basis for the Court to decide the issue. The defendants have identified nothing that an evidentiary hearing would add.
Massachusetts, like other jurisdictions, has long admitted handwriting comparison by a qualified expert. See e.g. Commonwealth v. O’Connell 438 Mass. 658, 662 (2003); Preston v. Peck, 271 Mass. 159, 163 (1930); Richardson v. Newcomb, 38 Mass. 315, 317 (1838). That practice has continued since Daubert and Kumho; Massachusetts Courts have considered the reliability of such testimony to be so firmly established as to obviate any need for preliminary screening. See Commonwealth v. O’Connell 438 Mass, at 662; Commonwealth v. Murphy, 59 Mass.App.Ct. 571, 576 (2003). In Murphy, the Appeals Court concluded that “as the courts in Massachusetts have long accepted as reliable expert testimony about the authorship of handwriting, a Lanigan hearing was not necessary even had one properly been requested.” Id. at 576. The Court cited Commonwealth v. Frangipane, 433 Mass. 527, 538 (2001), in which the Supreme Judicial Court observed that a Lanigan hearing is unnecessary “where qualified expert testimony has been accepted as reliable in the past in Massachusetts Appellate cases.”
Federal Courts, like Massachusetts, have long admitted expert testimony on handwriting comparison. See, e.g., United States v. Swan, 396 F. 2d 883, 885 (2d Cir.), cert, denied, 393 U.S. 923 (1968); Ryan v. United States, 384 F. 2d 379, 380 (1st Cir. 1967); United States v. Acosta, 369 F. 2d 41, 42 (4th Cir. 1966), cert, denied, 386 U.S. 921 (1967); Fuston v. United States, 22 F. 2d 66 (9th Cir. 1927); Neall v. *195 United States, 118 F. 699 (9th Cir. 1902); United States v. Chamberlain, 25 F. 394 (D.N.Y. 1874). That practice has continued since Daubert, with a series of federal appellate decisions upholding admission of such testimony in the face of Daubert challenges. See United States v. Crisp, 324 F.3d 261, 270-71 (4th Cir. 2003); United States v. Mooney, 315 F.3d 54, 62-63 (1st Cir. 2002); United States v. Jolivet, 224 F.3d 902, 905-06 (8th Cir. 2000); United States v. Paul 175 F.3d 906, 909-11 (11th Cir. 1999); United States v. Jones, 107 F.3d 1147, 1156-60 (6th Cir. 1997); United States v. Velasquez, 64 F.3d 844, 848-50 (3d Cir. 1995).
These decisions rely on two principal points. First, the import of Daubert was not to compel “wholesale exclusion of a long-accepted form of expert evidence.” United States v. Crisp, 324 F.3d at 268. Rather, Daubert provides a framework for courts “to entertain new and less conventional forms of expertise,” admitting what is reliable, even if not yet generally accepted, among such new fields, but screening out the unreliable. Id. Second, handwriting comparison, unlike some other areas of expert evidence, is accessible to jurors; they are familiar with the subject matter from everyday experience, and are capable of understanding and evaluating expert testimony on it through their own observation. For that reason, there is little risk of “undue prejudice from the mystique attached to experts.” United States v. Paul, 175 F.3d at 911.
Despite this widespread appellate authority approving admission of expert testimony on handwriting comparison, post-Daubert, two federal district courts have excluded it, largely on the strength of Professor Saks’s testimony. See United States v. Saelee, 162 F.Sup.2d 1097 (D.Alaska, 2001) (involving hand printing); and United States v. Lewis, 220 F.Sup.2d 548, 550-54 (S.D.W.Va. 2003). A third district court adopted the analysis of those two to exclude the evidence. See United States v. Brewer, 2002 U.S. Dist. LEXIS 6689 (E.D.Ill.).
Two other federal district court decisions, on which Professor Saks relies extensively, admitted expert testimony as to handwriting comparison, but imposed certain limitations on the opinions to be expressed. See United States v. Hines, 55 F.Sup.2d 62 (D.Mass. 1999) (holding handwriting analysis in general admissible under Kumho, but precluding expert from expressing ultimate conclusion on authorship);[1] United States v. Starzecpyzel, 880 F.Sup. 1027, 1040-47 (S.D.N.Y. 1995) (holding, prior to Kumho, that Daubert had no application to handwriting analysis, and that analysis would be admitted as non-scientific expert testimony, but precluding witness from expressing degree of certainty of identification based on a nine-level scale, finding insufficient foundation).[2]
Among the reasons recognized in both of these decisions for admitting the testimony, as in the appellate decisions referred to supra is the familiarity of handwriting comparison to jurors, enabling them to understand and evaluate expert testimony on the subject. See United States v. Hines, 55 F.Sup.2d at 69-70; United States v. Starzecpyzel 880 F.Sup. at 1044. Indeed, the Supreme Judicial Court has held that, although expert testimony is helpful, jurors are competent to perform handwriting comparison themselves, without expert testimony. See Commonwealth v. O’Connell, 438 Mass, at 662-63. Unlike other types of expert testimony, which jurors often must evaluate based largely on pure credibility determinations, jurors themselves can see the points of comparison on which a handwriting analyst relies. An expert may point out similarities and differences that untrained jurors would otherwise miss, and may explain their significance in light of the expert’s training and experience, but the actual comparison falls ultimately to the jurors themselves. See United States v. Hines, 55 F.Sup.2d at 69-70; United States v. Starzecpyzel, 880 F.Sup. at 1044.
The overwhelming weight of authority, both before and since Daubert, as well as sound reason, thus favors admission of expert testimony on handwriting comparison. That is not necessarily the end of the inquiry for all time; historical practice could be proved wrong by empirical research. See Commonwealth v. Murphy, 59 Mass.App.Ct. at 576, n. 6 (“We see nothing in Frangipane that would preclude a party from requesting a Lanigan hearing should science in the particular field advance to a point where expert testimony, generally accepted as reliable in the past, would no longer be so considered”). But historical practice does establish something in the nature of a rebuttable presumption of reliability, sparing courts and parties from the burden of de novo consideration every time evidence is offered of a type that has long been accepted. See id. at 576; Canavan’s Case, 432 Mass, at 317 (Greaney, J., concurring).
The defendants here attempt to challenge the historical practice by the affidavit of Professor Saks.[3] The Court has examined that affidavit, along with the contrary affidavits offered by the Commonwealth.[4] Professor Saks’s opinion, although expressed at considerable length, amounts in substance to three principal points: (1) no empirical research establishes the propositions, widely touted by handwriting examiners, that each individual’s handwriting is unique and that no individual writes exactly the same way twice;[5] (2) little or no research that Professor Saks considers methodologically sound establishes that handwriting examiners as a group are proficient at making accurate identification; and (3) the research that exists indicates that examiners sometimes disagree with each other, that they sometimes are unable to reach conclusions, and that results of proficiency tests vary widely depending on a number of factors, including the nature of the problems presented and the circumstances of the tests administered.[6], [7]
*196 Professor Saks’s objections do not establish that “science in the particular field [has] advance[d] to a point where expert testimony, generally accepted as reliable in the past, would no longer be so considered.” Commonwealth v. Murphy, 59 Mass.App.Ct. at 576, n. 6. His first proposition, that research does not establish uniqueness of handwriting, may be of academic interest, but has little bearing on admissibility of the testimony offered. The Commonwealth’s expert recites that proposition as a theoretical underpinning of his field, but the opinions he expresses do not depend on it. Rather, he bases his opinions on identified similarities and differences, which a jury will be able to see, understand, and evaluate, in light of all the other evidence presented in the case. That he cannot quantify the strength of his opinions by reference to a database comparable to that used for DNA typing may bear on the weight a jury would give his opinion, but does not warrant its exclusion.
Professor Saks’s second proposition is effectively refuted by the affidavit of Professor Kam. His background, recited in his affidavit, includes extensive direct performance of empirical research published in peer reviewed journals, including four publications of results of empirical studies addressed to the question of proficiency of handwriting examiners as compared to lay persons in identifying authorship of documents. In his studies, professional examiners made substantially fewer erroneous identifications, and correctly determined the genuineness or non-genuineness of signatures at substantially higher rates, than lay persons. Professor Kam cites other peer-reviewed published research with similar results.[8]
Professor Kam’s work does not establish that handwriting experts never err, that they always succeed in reaching conclusions, or that they always agree with each other, nor does his work establish that lay persons are incapable of making correct comparisons. None of that is required. The question, ultimately is whether expert testimony on the subject will assist the jury in performing a task that, as the Supreme Judicial Court has held, the jury is itself competent to perform. See Commonwealth v. Goodman, 54 Mass.App.Ct. 385, 391 (2002) (“helpfulness to the jury” referred to as one of “the touchstones of the inquiry”). Professor Kam’s work is sufficient to establish that it will. Professor Saks’s third proposition may provide fodder for cross-examination, but does not undermine the conclusion that expert testimony on the subject of handwriting comparison will be helpful to the jury.
The question thus comes down to the qualifications of the expert proposed in this case. Review of his background reveals formal training from the New York City Police Department and the Federal Bureau of Investigation; certification and repeated re-certification by the American Board of Forensic Document Examiners, including proficiency tests; and some twenfy-nine years of experience in forensic document examination with the New York City Police Department and the United States Postal Inspection Service, including regularly administered blind proficiency testing, and review of his work at the latter agency by a second examiner in each case. These qualifications are sufficient.
CONCLUSION
For the reasons stated, the Defendants’ Motion to Exclude Expert Testimony Concerning Handwriting Comparison and Authorship or, Alternatively, for an Evidentiary Hearing is DENIED.

 In United States v. Mooney, 315 F.3d at 62-63, the First Circuit affirmed the ruling of another judge in the Circuit who had considered the reasoning of Hines and declined to apply the same limitation.

 Professor Saks’s affidavit refers to these two decisions by name, but does not give their citations, and does not acknowledge that their holdings are contrary to the position he advocates. Such omissions are surprising in a submission from a law professor.

 Professor Saks identifies himself as a professor of law and psychology at Arizona State University, with “doctoral training in experimental social psychology,” with emphasis on “research methodology and statistical analysis.” He has published articles in law journals, a legal treatise, and one article in the Journal of Forensic Science. It does not appear that he has published any empirical research of his own on any subject, or that he has published anything in the area of research design or methodology.

 The Court has disregarded those portions of Professor Saks’s affidavit that consist of argument and advocacy, as distinct from fact and opinions on matters of fact.

 Professor Saks draws an analogy to the field of DNA typing, in which experts do not claim uniqueness, but refer to the probability of coincidental similarity. The analogy seems less than fully apt, in that DNA involves a finite number of physical components, thus lending itself to calculation of probability, while handwriting is more in the nature of behavior, subject to virtually infinite variation.

 Professor Kam’s affidavit points out that certain of the studies on which Professor Saks relies have not been published in any peer reviewed publication.

 Professor Saks draws particular attention to variation in proficiency when the author is a teenager and when the sample is hand printed, and to bias arising from the examiner knowing the result desired or expected by investigators. This case does not involve teenagers. Although one of the entries on which Mr. Breslin opines is hand printed, the issue of ultimate significance in the case is the authorship of signatures. Although Professor Saks asserts that “In the present case ... it appears that the examiner had been informed who the suspect was,” nothing in the materials before the Court supports that assertion.

 Professor Saks criticizes Professor Kam’s research on the theory that the results may have been skewed by different financial incentives affecting lay participants and professional examiners. Professor Kam has tested and refuted that theory, and has published the results of his test in a peer reviewed journal.