J-A20025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE:  ESTATE OF WALTER J. KONJOLKA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| APPEAL OF:  TARA JOLLEY KONJOLKA BROWN | |
| Appellant | No. 1664 WDA 2015 |

Appeal from the Order entered October 1, 2015
In the Court of Common Pleas of Allegheny County
Orphans' Court at No: 0936 of 2014

BEFORE:  BOWES, STABILE, and MUSMANNO, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 22, 2017**

Appellant Tara Jolley Konjolka Brown ("Brown") appeals from the October 1, 2015 order entered in the Court of Common Pleas of Allegheny County ("trial court") denying the petition to admit the codicil dated July 1, 2012, ("Codicil") into probate.  Appellee is the Estate of Walter J. Konjolka. Upon review, we affirm.

Walter J. Konjolka, ("the Decedent") died testate on February 3, 2014. On February 13, 2014, testamentary letters were granted to Ena W. Konjolka ("Konjolka") for the Decedent's will dated October 15, 2003 ("the Will").  On October 14, 2014, Brown filed a petition for citation seeking to have a codicil dated July 1, 2012, into probate.  Konjolka filed an answer and new matter on December 4, 2014, asserting the Codicil was a forgery.

Brown filed a reply to the new matter on January 23, 2015. Konjolka and Brown filed pre-trial statements on April 20, 2015. The trial court held a hearing on May 4-5, 2015. Following a hearing, the trial court made the following fact and credibility findings in its June 30, 2015 opinion.

> Both parties presented the testimony of expert witnesses with regard to whether the Decedent's signature on the Codicil was a forgery. [Brown's] expert, George Papadopoulos, opined that the signature was authentic, while the Executrix's expert, Khody Detwiller determined that the signature was a "crude imitation" and not a genuine signature. Their reports were introduced as Exhibits A and 6, respectively, along with Exhibit 7, which was Mr. Detwiller's enlarged comparison charts. The [trial court found] Mr. Detwiller's testimony to be more convincing for the following reasons. First, Mr. Detwiller's credentials, education, and training are superior to that of Mr. Papadopoulos. Second, Mr. Detwiller's techniques, including the scanning of the signatures at high resolution of 800DPI and 1200 DPI, are superior to Mr. Papadopoulos's use of a hand-held magnifying glass of unknown strength. Third, Mr. Detwiller's analysis of each portion of the known signatures vs. the questioned signature was infinitely more detailed than the analysis put forth by Mr. Papadopoulos. Accordingly, the [trial court] relied more heavily on the opinion of Mr. Detwiller.

> In addition to the testimony of the experts, [Brown] presented the testimony of Isaac Melvin, who was the Notary Public. Mr. Melvin testified the Decedent called him and asked him to notarize the document. He met the Decedent, along with the three witnesses, at the Steak 'n Shake on Route 51 on July 1, 2012. He requested identification from each of them and he witnessed the Decedent signing the document, which he notarized for a fee of $100. Conveniently, Mr. Melvin's notary log was "destroyed in a fire" and he did not produce any evidence of payment. The Court finds the loss of the notary log book to be dubious and the $100 payment for a single notary act to be extraordinary; thus, Mr. Melvin's testimony was questionable.

> [Brown] also presented her own testimony, the testimony of her [h]usband, and the testimony of Joseph DeSalvo. All

three of these witnesses testified that they were present when the Decedent signed the Codicil and they were witnesses to his signature. [Brown's] testimony was self-serving and her credibility was questionable based upon her criminal history and check forgery introduced as Exhibit 1. Also, the fact that she threatened the Executrix with "war" in an email and then appeared with the purported Codicil almost three months later, which was over eight months after the Decedent's death is suspicious. The testimony of [Brown's] [h]usband was also self-serving in that he would benefit, even if indirectly, if [Brown] received an inheritance from her father. With regard to Joseph DeSalvo, there was testimony that he was incarcerated on the date that the Codicil was allegedly signed. He claimed to have been on "work release" from the Fayette County Jail; however, [Brown] failed to produce any evidence, even after the hearing, to prove that claim. As such, the [trial court was] skeptical that it was true, especially in light of the fact that Mr. DeSalvo claimed that he was the only person to ever be granted work release from the Fayette county Jail and he was permitted to basically come-and-go as he pleased.

Trial Court Opinion, 6/30/15, at 1-3 (sic).

On July 17, 2015, Brown filed exceptions/objections to the trial court's decision. On July 21, 2015, the trial court established a briefing schedule on Brown's exceptions. By order entered October 1, 2015, the trial court denied the exceptions to the trial court's June 30, 2015 opinion. Brown filed a timely notice of appeal on October 22, 2015. The trial court did not request a concise statement of matters complained of on appeal, instead, the trial court issued a Pa.R.A.P. 1925(a) opinion incorporating its June 30, 2015 opinion.

This Court issued an order on January 24, 2017, striking the brief of the Estate of Walter J. Konjolka and Brown's reproduced record as the documents contained confidential personal identification information of a

non-party. The parties were directed to file identical documents with all confidential information redacted. Appellee filed a redacted brief on January 30, 2017,[1] and Appellant filed a redacted reproduced record on March 10, 2017.

On appeal, Brown raises four issues which we quote verbatim.

1. The [trial] court erred by patently ignoring the clear and convincing evidence burden of Appellee in making its decision. The [trial] court's own findings of fact can only support a decision that the codicil in question was genuine.

2. The [trial] court erred as a matter of law by admitting into evidence a detailed expert report that had never been provided to [Brown's] counsel, additionally th[e trial] court further erred by permitting the Appellee's expert to testify extensively with regard to said report.

3. The [trial] court erred by patently ignoring established case law holding that expert testimony in a forgery case holds very little weight and cannot prevail against credible testimony of fact witnesses.

4. The [trial] court erred by permitting a witness to testify that was never listed on Appellee's pre-trial statement and unknown to [Brown's] counsel. The [trial] court further erred by admitting into evidence documents that were brought by this witness that had never been seen by [Brown's] counsel.

Appellant's Brief at 4.

Brown's first claim is a challenge to the trial court's findings of fact. Our standard of review of such claim is well established.

---

[1] While Appellee redacted the information, upon scanning the document into this Court's computer system, the redacted information remains visible. Thus, we will order that the scanned document be sealed from public viewing.

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses, and on review, we will not reverse its credibility determinations absent an abuse of discretion.

*In re Estate of Cruciani*, 986 A.2d 853, 855 (Pa. Super. 2009) (quoting *In re: Estate of Presutti*, 783 A.2d 803, 805 (Pa. Super. 2001) (citation omitted)).  Moreover, in cases involving alleged forgery, the moving party "has the burden of proving the existence of the forged document by clear, direct, precise, and convincing evidence."  *Id.* (citations omitted). Additionally, "forgery presents an issue of fact, the resolution of the issue necessarily turns on the court's assessment of the witnesses' credibility."  *Id.* (citations omitted).

In the matter *sub judice*, the trial court found the testimony of Brown's witnesses, Melvin, DeSalvo, Joseph Brown, and Brown herself, incredible. Upon review, we find that the trial court adequately explained the reasons for finding this testimony incredible; thus, the trial court did not abuse its discretion.  *See* Trial Court Opinion, 6/30/15, at 1-3.  Moreover, the trial court found that the expert testimony provided by Mr. Detwiler was more credible than the testimony of Mr. Papadopoulos, due to his superior credentials, education, training, technique, and his analysis was significantly more detailed.  *See id.* at 1-2.  The record supports this finding.  Upon review, the trial court found there was clear and convincing evidence that

the codicil in question was a forgery and did not abuse its discretion; thus, Brown's first claim fails.

Relatedly, Brown argues that the trial court improperly weighed the testimony of Mr. Detwiler because "[t]he Supreme Court has held that the opinion evidence of an expert is, in cases of forgery, entitled to very little weight and cannot prevail against positive evidence of actual facts by witnesses."  Appellant's Brief at 15 (citing *In re Elias' Estate*, 239 A.2d 393, 396 (Pa. 1968) (additional citations omitted)).  While Brown quotes the holding of *Elias*, she omits a key phrase resulting in a misstatement of the holding in that case.  The complete holding reads as follows:  "the opinion evidence of an expert, is in cases of forgery, entitled to very little weight and cannot prevail against positive evidence of actual facts by witnesses *whom the Chancellor considers credible*."  *Elias*, 239 A.2d at 396.  As discussed above, the trial court found the testimony of Brown's fact witnesses incredible.  Thus, Brown's third claim fails.

Next, Brown argues that the trial court erred by permitting Mr. Detwiler to testify, and admitting his expert report into the record. Appellant fails to develop the argument with citation to and analysis of relevant authority; thus, Brown's claim is waived.  *See Harris v. Toys "R" Us-Penn, Inc.*, 880 A.2d 1270, 1279 (Pa. Super. 2005) (citing Pa.R.A.P. 2119(b); *Eichman v. McKeon*, 824 A.2d 305, 319 (Pa. Super. 2003)). Even if Brown's claim was not waived, it is meritless.  Brown cites Pa.R.Civ.P. 4003.5, which deals with the discovery of expert testimony and

an expert report, not the admission of expert testimony. Brown's second claim fails.

Finally, Brown argues that the trial court erred by permitting Michelle Horan, the Fayette County Prison records supervisor, to testify because she was not listed as a witness on the pretrial statement. Brown fails to cite to any legal authority for this proposition other than a blanket assertion that it was a violation of Pa.R.Civ.P. 4003.5. Thus Brown's claim is waived for failing to develop an argument. *See Harris*, 880 A.2d at 1279; Pa.R.A.P. 2119(b). Even if Brown's claim was not waived, it is meritless, since Rule 4003.5 applies to the discovery of expert testimony, not the admissibility of impeachment testimony.

Order affirmed. Appellee's Brief is ordered to be sealed from public view.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/22/2017

- 7 -